UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GURINDER SINGH BAINS, *as Personal
Representative of the Estate of Jaswinder Singh,
deceased*, HARPREET SINGH, *his wife*,
DILPREET KAUR, LAKHWINDER
KAUR,

          Plaintiffs,                     **DECISION AND ORDER**

           v.                                 6:23-cv-06208 EAW

AMERICAN TACTICAL, INC., ANTHONY
DICHARIO, JOSEPH CALABRO,
SCHMEISSER GMBH, and 365 PLUS
D.O.O.,

          Defendants.

_____

GURINDER JOHAL, *personal representative of
the Estate of Amarjeet Johal*, DILJOT
SEKHON, *personal representative of the Estate
of Amarjit Sekhon*, MARY CAROL WEISERT,
*personal representative of the Estate of John
Weisert,* MATTHEW D. ALEXANDER, *as the
Natural Parent and Next Friend of Karli Smith,
Deceased,* and JASPREET SEKHON, *personal
representative of the Estate of Jasvinder Kaur*

          Plaintiffs,

           v.                                 6:23-cv-06382 EAW

AMERICAN TACTICAL, INC., ANTHONY
DICHARIO, JOSEPH CALABRO,
SCHMEISSER GMBH, and 365 PLUS
D.O.O.,

          Defendants.

_____

## INTRODUCTION

These actions arise out of a tragic mass shooting at a FedEx facility on April 15, 2021, in Indianapolis, Indiana (the "Shooting"). The perpetrator of the Shooting killed eight people and wounded seven others, before committing suicide. Plaintiffs—whom are either themselves victims of the Shooting or relatives or representatives of victims of the Shooting—have sued defendants American Tactical, Inc. ("ATI"), Anthony DiChario ("DiChario"), Joseph Calabro ("Calabro"), Schmeisser GmbH ("Schmeisser"), and 365 Plus d.o.o. (collectively "Defendants")[1] for negligence, public nuisance, wrongful death, and negligent infliction of emotional distress.

*Bains v. American Tactical, Inc.*, Civil Action No. 23-cv-06208 (hereinafter the "Bains Action") was initially commenced in this District. (Bains Action, Dkt. 1). *Johal v. American Tactical, Inc.*, Civil Action No. 23-cv-6382 (hereinafter the "Johal Action") was initially commenced in the United States District Court for the Southern District of Indiana (Johal Action, Dkt. 1), but was transferred to this District on motion of the plaintiffs in that case—made before any Defendants had been served or had appeared, and without their knowledge or consent (*see* Johal Action Dkt. 12; Johal Action, Dkt. 17).

Thereafter, ATI, DiChario, and Calabro (collectively the "ATI Defendants") moved in each of these actions for dismissal, arguing that: (1) venue is improper in this District; (2) this Court lacks personal jurisdiction over DiChario; (3) the ATI Defendants are statutorily immune from suit; and (4) Plaintiffs have failed to state a cognizable claim. (Bains Action,

---

[1] There have been no appearances in these cases by Schmeisser or 365 Plus d.o.o.

Dkt. 24; Johal Action, Dkt. 47). For the reasons set forth below, the Court agrees that venue does not lie in this District. The Court further concludes that it is the interest of justice to transfer these actions to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

## BACKGROUND

### I. Factual Background

ATI is a New York corporation with its principal place of business in Summerville, South Carolina. (Bains Action, Dkt. 16 at ¶ 38). It is a "an importer, manufacturer, and seller of firearms, ammunition, and accessories," and is the exclusive United States importer of magazines manufactured by Schmeisser, a German corporation that "manufactures firearm accessories, weapon system components, and firearms." (*Id.* at ¶¶ 39-40, 46). Defendant DiChario is the President of ATI and Calabro is ATI's Director of Marketing and Purchasing. (*Id.* at ¶¶ 42, 44).

On April 15, 2021, a mass shooter perpetrated the Shooting at a FedEx facility in Indianapolis, Indiana. (*Id.* at ¶¶ 16-17). Thirteen people were shot during the Shooting, and eight of the victims died from their injuries. (*Id.* at ¶ 18). The shooter utilized an AR-15 style firearm combined with a 60-round Schmeisser high-capacity magazine (the "Magazine"). (*Id.* at ¶¶ 16-17). ATI "imported, marketed, distributed, and sold the Magazine, either directly or through one or more intermediaries, to the" shooter. (*Id.* at ¶ 41).

As noted above, Plaintiffs are either victims of the Shooting or relatives or representatives of victims of the Shooting. (*Id.* at ¶¶ 19-22, 34-37; Johal Action, Dkt. 10 at

¶¶ 19, 30-41). They allege that Defendants "deliberately marketed and sold" high-capacity magazines ("HCMs") "without a single safeguard, screening, or limit," and that they "specifically targeted these highly lethal products to a consumer base filled with impulsive young men who feel they need to harm others in order to prove their strength and who have militaristic delusions of fighting in a war or a video game[.]" (Bains Action, Dkt. 16 at ¶¶ 11, 13). The specific "reckless practices" identified by Plaintiffs are: (1) "selling HCMs with a 60-round capacity"; (2) "allowing customers to acquire HCMs without proving any legitimate reason for needing an HCM for law-abiding activities"; (3) "allowing customers to acquire HCMs without engaging in any face-to-face transactions with any Federal Firearms Licensee"; (4) "allowing customers to acquire HCMs without providing their criminal history or completing a mental health screening"; and (5) "affirmatively marketing HCMs in a manner that they knew, and intended, would target these highly lethal products to young men with delusions of fighting in a war, an obsession with video games, and insecurities regarding their masculinity." (*Id.* at ¶ 15). Plaintiffs allege that these "reckless actions" by Defendants "directly and foreseeably channeled a 60-round HCM into the hands of the Shooter or somebody like him." (*Id.* at ¶ 16). Plaintiffs also allege that "the Shooter would not have selected or utilized the HCM in the attack but for the Defendants' negligent or unlawful design, marketing, or sales practices." (*Id.* at ¶ 29).

## II.    Procedural Background

The Bains Action was commenced in this District on April 13, 2023. (Bains Action, Dkt. 1). The Johal Action was commenced in the United States District Court for the Southern

District of Indiana on April 14, 2023. (Johal Action, Dkt. 1). On June 13, 2023, the plaintiffs in the Johal Action filed what they denoted as an "uncontested" and "unopposed" motion to transfer the case to this District. (Johal Action, Dkt. 12). No defendant had been served or appeared in the Johal Action at that time, and the ATI Defendants confirmed at oral argument that they were unaware of this motion and did not consent to the relief sought therein. The memorandum of law submitted in support of the motion sought transfer to this District for purposes of seeking consolidation with the Bains Action. (Johal Action, Dkt. 13 at 2). This memorandum asserted that "venue is . . . proper in the Western District of New York where the first-filed *Bains* action is pending" (*Id*. at 3), but provided no support for that assertion. The United States District Court for the Southern District of Indiana granted the motion to transfer without analysis on July 6, 2023. (Johal Action, Dkt. 17).

After the transfer of the Johal Action, Plaintiffs sought to consolidate the cases. (Johal Action, Dkt. 24). The Court denied Plaintiffs' request without prejudice as premature on August 31, 2023, noting that Defendants had not been served and had not had an opportunity to be heard on the issue. (Johal Action, Dkt. 30).

The ATI Defendants then filed the pending motions to dismiss in both cases. (Bains Action, Dkt. 24; Johal Action, Dkt. 47). In their motions to dismiss, the ATI Defendants assert improper venue, lack of personal jurisdiction as to DiChario, statutory immunity, and failure to state a claim. Plaintiffs have cross-moved for jurisdictional discovery with respect to DiChario. (Bains Action, Dkt. 25; Johal Action, Dkt. 48). Both the motions to dismiss and the cross-motions for jurisdictional discovery have been fully briefed. (*See* Bains Action Dkt.

26; Bains Action, Dkt. 27; Bains Action, Dkt. 29; Bains Action, Dkt. 30; Bains Action, Dkt. 31; Bains Action, Dkt. 32; Johal Action, Dkt. 49; Johal Action, Dkt. 50; Johal Action, Dkt. 52; Johal Action, Dkt. 53; Johal Action, Dkt. 55). The Court heard oral argument on June 26, 2024, and reserved decision. (Bains Action, Dkt. 39; Johal Action, Dkt. 71).

## DISCUSSION

### I. Legal Standard

Venue in a federal court is governed by 28 U.S.C. § 1391(b). Under that statute, a civil action is properly commenced in either (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1), (2).[2] "The [Second] [C]ircuit has cautioned district courts to 'take seriously the adjective "substantial,"' explaining that venue is proper only if '*significant* events or omissions *material* to the plaintiff's claim' occurred in the chosen district." *Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*, No. 14-CV-9145 (LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphases in original)). Venue can be proper in more than one district "as long as 'a substantial part' of the underlying events took place in those districts." *Glasbrenner,* 417

---

[2]    The third subsection of § 1391(b) provides that "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). This provision has no applicability here.

F.3d at 356. Courts are "required to construe the venue statute strictly." *Id*. at 357 (citing *Olberding v. Illinois Cent. R.R.,* 346 U.S. 338, 340 (1953)).

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss for improper venue. It is Plaintiffs' burden to demonstrate that venue is proper. *See Wohlbach v. Ziady*, No. 17 CIV. 5790 (ER), 2018 WL 3611928, at *2 (S.D.N.Y. July 27, 2018) ("When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper."). "When deciding a motion to dismiss for improper venue, the court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Palmore v. Napoli Shkolnik PLLC*, No. 23-CV-1616 (ER), 2024 WL 1330003, at *9 (S.D.N.Y. Mar. 28, 2024). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

## II.     Venue is not Proper in this District

The amended complaint in the Bains Action—which was commenced in this District— states that "[v]enue is proper in this Court as American Tactical has itself sued others in federal courts in this jurisdiction on prior occasions." (Bains Action, Dkt. 16 at ¶ 51).[3] This

---

[3] Because the Johal Action was initially commenced in the Southern District of Indiana, the amended complaint in that action does not allege the propriety of venue in this District. That said, there are no differences in the factual allegations about the ATI Defendants' actions in the Bains Action and the Johal Action. For ease of reference, the Court has cited mainly to the filings in the Bains Action.

is not a basis for venue under the relevant statute. Further, although the amended complaint in the Bains Action alleges that DiChario is a citizen of New York and a resident of this District (*see id*. at ¶¶ 43, 52), DiChario has submitted a sworn declaration stating that he has been a citizen, resident, and domiciliary of South Carolina since 2013 (Bains Action, Dkt. 24-1 at ¶ 10). DiChario has also sworn under penalty of perjury that he is registered to vote in South Carolina and that he does not reside in or own any real property in New York. (Bains Action, Dkt. 24-1 at ¶¶ 11-12). Plaintiffs have not controverted these statements by DiChario, and there is thus no factual dispute that he is not in fact a resident of New York. Venue in this District is thus not appropriate under § 1391(b)(1). At oral argument, Plaintiffs' counsel confirmed that Plaintiffs were not arguing to the contrary.

Plaintiffs argue that venue in this District is proper under § 1391(b)(2), because "the crux of Plaintiffs' allegations are tied to ATI's marketing tactics coupled with its failure to implement safeguards to prevent dangerous individuals from obtaining the HCMs" and "ATI's actions were cultivated, directed, and overseen in the Western District of New York where its Director of Marketing and Purchasing, Defendant Calabro, works and resides." (Bains Action, Dkt. 26 at 29). Defendants concede that Calabro is a resident and citizen of New York, but argue that his role as ATI's Director of Marketing "could only be tangentially related to a non-party using one of ATI's products illegally to murder and injure Plaintiffs and their decedents" and that "[e]ven if Plaintiffs' claims regarding ATI's marketing were accurate, which they are not, this marketing would have had to influence the Shooter's actions, which occurred in Indiana, not New York. Further, all executive and final decisions regarding

ATI's marketing and advertising is made by persons who are located at its South Carolina facility." (Bains Action, Dkt. 29 at 8).

Calabro has submitted a sworn declaration in which he states that "[a]ll marketing, promotional, and advertising materials on which [he] work[s] for ATI are sent to ATI's executive officials in South Carolina for review and approval before they are published." (Bains Action, Dkt. 30-1 at ¶ 6). Consistent with Calabro's declaration, the amended complaint in the Bains Action alleges that DiChario "has the ultimate authority to influence and direct American Tactical's marketing strategy and to cease running specific advertisements or other content published by American Tactical on its social media platforms." (Bains Action, Dkt. 16 at ¶ 42). DiChario has submitted a sworn declaration in which he states that since 2013, he has not "transacted any business, or committed any acts, on behalf of ATI in New York in connection with its importation, marketing, distribution, or sale of magazines." (Bains Action, Dkt. 24-1 at ¶ 14).

"[W]hen a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). First, the Court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Id*. Second, the Court must "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to those claims have occurred in the district in question." *Id*. (quotation and alterations omitted). Here, Plaintiffs' claims are for negligence, wrongful death, public nuisance, and negligent infliction of emotional distress.

They all arise out of Defendants' alleged reckless sales and marketing practices regarding HCMs, which purportedly channeled a 60-round HCM into the hands of the shooter. The relevant acts and omissions are accordingly the adoption of those sales and marketing practices.

On the record before the Court, there is no basis to conclude that those alleged acts and omissions occurred in any meaningful fashion in this District. In particular, while the amended complaints allege that Calabro "oversees and directs" ATI's marketing (*see, e.g.,* Bains Action, Dkt. 16 at ¶ 44), he has stated under penalty of perjury that he is not the final decision-maker with respect to marketing. This statement by Calabro is consistent with Plaintiffs' own allegation that it is DiChario who has "the ultimate authority to influence and direct American Tactical's marketing strategy and to cease running specific advertisements or other content published by American Tactical on its social media platforms." (*Id*. at ¶ 42).

Further, there is nothing in the record before the Court, including Plaintiffs' allegations, to support the conclusion that Calabro played any role in formulating the sales policies that make up the bulk of Defendants' allegedly "reckless practices." (*See id*. at ¶ 15). In other words, it is not a reasonable inference from Plaintiffs' allegations that Calabro had any control over whether ATI sold HCMs with a 60-round capacity, whether ATI required customers to provide a "legitimate reason for needing an HCM for law-abiding activities" prior to acquiring the same, whether ATI required customers to engage in a face-to-face transaction, or whether ATI required customers to provide their criminal history or complete a mental health screening. (*Id*.).

Additionally, Plaintiffs allege that the ATI marketing videos at issue—which "featur[e] extreme violence and reckless spraying of bullets"—were produced by a third-party media production company, Polenar Tactical. (*Id*. at ¶ 106; *see* Johal Action, Dkt. 10 at ¶ 110). Thus, in addition to not being the final decisionmaker with respect to ATI's marketing strategies, it is also clear from Plaintiffs' own allegations that Calabro did not produce the specific advertisements at issue in these matters.

"'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432-33. Here, taking the facts in the light most favorable to Plaintiffs, there is no basis to conclude that the acts and omissions that form the basis for Plaintiffs' claims—that is, the adoption of ATI's sales and marketing strategies, pursuant to which it "sold HCMs without a single safeguard, screening, or limit" (Bains Action, Dkt. 16 at ¶ 11)—occurred in this District. Instead, those alleged acts and omissions took place in South Carolina, where ATI has its principal place of business, where DiChario (who Plaintiffs acknowledge has final authority over ATI's sales and marketing decisions) lives and works, and where Calabro sent his work product for review and approval. *Cf. Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 954 (N.D. Ill. 2017) (finding venue proper in the Northern District of Illinois because the plaintiff's allegations raised the reasonable inference that it was where the policies underlying their claims had been set).

While a district need not be the "best venue" to satisfy § 1391(b)(2), it must be "a logical one with a substantial connection to the litigation." *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 59 (2d Cir. 2007). This District does not satisfy that standard in either of these cases. The Court therefore agrees with the ATI Defendants that venue is not proper in this District.

**III.    Transfer of these Actions is in the Interest of Justice**

Having determined that the Bains Action is "a case laying venue in the wrong division or district," this Court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). [4] In their moving papers, the ATI Defendants have not addressed the issue of transfer, and specifically have not offered any argument as to why it would not be in the interest of justice to transfer the Bains Action to an appropriate district, as opposed to dismissing it outright.

"Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel*, 428 F.3d at 435. Transfer is generally appropriate where it will "promote[] expeditious and orderly adjudication of th[e] case on the merits[.]" *Pisani v. Diener*, No. 07-CV-5118 JFB/ARL, 2009 WL 749893, at *9 (E.D.N.Y. Mar. 17, 2009). The Court finds that transfer of the Bains Action is in the interest of justice because transfer—

---

[4]    The Court need not resolve DiChario's personal jurisdiction challenge prior to transfer, because "[t]he language of 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962).

rather than dismissal—will promote the expeditious and orderly adjudication of the significant legal questions presented by the instant litigation.

The Court accordingly must determine the appropriate district to which to transfer the Bains Action. At oral argument, when the Court raised the issue, Plaintiffs took the position that in the event the Court found transfer appropriate, the matter should be transferred to the District of South Carolina. The ATI Defendants contended that either the Southern District of Indiana or the District of South Carolina would be a more appropriate venue than this District, but did not ultimately advocate for one over the other.

In deciding where to transfer the Bains Action, the Court may consider:

> (1) the convenience of parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof and the locus of operative facts; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the action can be tried more expeditiously and inexpensively (e.g., calendar congestion); and (7) the totality of circumstances.

*Palm Bay Int'l, Inc. v. Cork Alliance, Inc.*, No. 09 CV 494(SJF)(MLO), 2010 WL 11556546, at *7 (E.D.N.Y. Sept. 20, 2010) (quoting *French Transit, Ltd. v. Modern Coupon Sys., Inc.*, 858 F. Supp. 22, 27 (S.D.N.Y. 1994)). In light of Plaintiffs' stated preference for transfer to the District of South Carolina, the Court concludes that the first two of these factors favor transfer to that District, which is more convenient for the ATI Defendants and where the witnesses associated with the ATI Defendants are more likely to be found.

Moreover, to the extent this action will focus on marketing and sales decisions made by the ATI Defendants, the proof is likely to be found in South Carolina. And a review of the Federal Court Management Statistics for the period ending December 31, 2023, indicates that

the median time from filing to disposition of a civil case in the Southern District of Indiana is 10.4 months, while it is only 8 months in the District of South Carolina.  *See* Federal Court Management Statistics—Profiles, United States District Courts—National Judicial Caseload Profile (December 31, 2023), *available online at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2023*.  For these reasons, the Court finds transfer of the Bains Action to the District of South Carolina to be in the interest of justice.

The appropriate treatment of the Johal Action is a more complicated procedural question.  By its own terms, § 1406(a) does not apply to the Johal Action, because it was not filed in a district where venue was improper.  *See Avalon Holdings Corp. v. Gentile*, No. 18-CV-7291 (VSB), 2019 WL 4640206, at *5 n.11 (S.D.N.Y. Sept. 24, 2019)  (explaining that § 1406(a) "applies only where venue is not proper in the district where the action was originally filed").  Instead, the Johal Action was filed in the Southern District of Indiana—where venue was concededly proper—and then transferred to this District pursuant to § 1404(a).  But that transfer was clearly erroneous, because a transfer under § 1404(a) may be made only to a district or division where the action "might have brought" or "to which all parties have consented."  This is not such a district.

Ordinarily, this Court would not revisit a transfer decision made by another court.  *See*! *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation").  However, where the transfer decision "was clearly

erroneous and would work a manifest injustice," *id*. at 817, the Court has the authority to correct the error. The Southern District of Indiana had an incomplete factual record at the time it made the transfer decision. First, it was likely under the impression that all the parties had consented to venue in this District, because the plaintiffs in the Johal Action represented that their motion to transfer was "unopposed" and "uncontested." But the ATI Defendants have made clear that they never consented to the transfer of the Johal Action to this District, and they were unaware of the motion to transfer. The record establishes that the ATI Defendants were not served until months after the transfer was effectuated.

Second, the Southern District of Indiana did not have the benefit of DiChario's declaration establishing that he has lived and worked in South Carolina since 2013. It also did not actually make a determination that venue was proper in this District, but concluded only that transfer was "in the interest of justice." (Johal Action, Dkt. 17 at 1). Moreover, because the plaintiffs in the Johal Action made the motion to transfer before serving the ATI Defendants, the ATI Defendants had no opportunity to be heard on the issue in the Southern District of Indiana. It would be manifestly unjust to require the ATI Defendants to litigate in this District—which, as discussed above, has no logical connection to Plaintiffs' claims—under these circumstances. For all these reasons, the Court concludes that this is the rare circumstance in which it is appropriate to reconsider a transfer order made by another court.

When the Court concludes that a matter has been transferred to it in error, it ordinarily will retransfer the case back to the district in which it was originally filed. *See, e.g., Pac. Coast Marine Windshields v. Malibu Boats,* No. 1:11-CV-01594-LJO, 2011 WL 6046308, at

*5 (E.D. Cal. Dec. 5, 2011), *adopted*, 2012 WL 12903557 (E.D. Cal. Jan. 4, 2012); *Illinois Union Ins. Co. v. Tri Core Inc.*, 191 F. Supp. 2d 794, 800 (N.D. Tex. 2002). But where venue is not proper in the transferee district, that district may instead transfer the matter to an appropriate district. *See Resol. Tr. Corp. v. Gibson*, No. CIV. A. 92-6958, 1993 WL 305950, at *5 (E.D. Pa. Aug. 11, 1993) (transferring matter to Central District of California after case was erroneously transferred from District of Columbia to Eastern District of Pennsylvania under § 1404(a), because "[v]irtually every event and omission giving rise to the[] claims occurred in the Central District of California").

The Court finds, for all the reasons previously discussed, that the interest of justice is best served by the transfer of both the Bains Action and the Johal Action to the District of South Carolina. Accordingly, rather than transfer the Johal Action back to the Southern District of Indiana pursuant to § 1404(a), the Court will transfer it to the District of South Carolina.

## CONCLUSION

For all these reasons, the Court resolves the ATI Defendants' pending motions to dismiss (Bains Action, Dkt. 24; Johal Action, Dkt. 47) solely to the extent that it finds that venue is improper in this District. In the interest of justice and pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), the Court transfers the Bains Action, Civil Action No. 23-cv-6208, and the Johal Action, Civil Action No. 23-cv-6382, to the United States District Court for the District of South Carolina. The Clerk of Court is directed to take the procedural steps

necessary to effectuate the transfers. The Court declines to reach the other issues raised by Defendants' motions to dismiss, which are more properly resolved by the transferee court.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  July 15, 2024
        Rochester, New York